DIANE MARIE ACCIAVATTI,LLC
77 JEFFERSON PLACE
TOTOWA, NEW JERSEY 07512
ATTORNEY FOR PLAINTIFF
(973) 790-5008

| | |
|---|---|
| DARCY SMITH, Ph.D, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
|                Plaintiff, | CIVIL CASE NO. |
| v. | |
| CYNTHIA BORSELLA LINDEMANN, ESQ., an attorney at law of the State of New Jersey; WEINSTEIN, SNYDER, LINDEMANN & SARNO; STEVEN URBINATO, ESQ., an attorney at law of the State of New Jersey; STARR, GERN, DAVISON & RUBIN,P.C.; MARC A. CALELLO, ESQ.; MARC A. CALELLO, P.C., | COMPLAINT AND DEMAND FOR TRIAL BY JURY |
|                Defendants | |

Plaintiff, Darcy Smith, Ph.D., a resident and citizen of the State of New York, with a business address of 177 Prince Street, New York, New York, as and for her Complaint against the Defendants, alleges and states as follows:

<u>PARTIES</u>

1. Plaintiff Darcy Smith, Ph.D. is and was at all relevant times an individual and citizen of the State of New York, with a business address of 177 Prince Street, New York, New York.

2. Defendant Cynthia Borsella Lindemann, Esq. ("Lindemann") is an individual and citizen of the State of New Jersey and is and was at all relevant times an attorney licensed to practice law in the

State of New Jersey.

3. Defendant Lindemann is and was at all relevant times a partner and\or employee of Weinstein, Snyder, Lindemann & Sarno ("the Weinstein firm") a law firm with its principal place of business located at 101 Eisenhower Parkway, Roseland, New Jersey.

4. Defendant the Weinstein firm is and was at all relevant times a partnership and entity engaged in the practice of law in the State of New Jersey.

5. Defendant Steven Urbinato, Esq. ("Urbinato") is an individual and citizen of the State of New Jersey and is and was at all relevant times an attorney licensed to practice law in the State of New Jersey.

6. Defendant Urbinato is and was at all relevant times a partner, shareholder, and\or employee of Starr, Gern, Davison, & Rubin, P.C., a law firm with its principal place of business located at 103 Eisenhower Parkway, Roseland, New Jersey.

7. Defendant Starr, Gern, Davison, & Rubin, P.C. ("the Starr law firm") is and was at all relevant times a professional corporation organized under the laws of the State of New Jersey engaged in the practice of law in the State of New Jersey.

8. Defendant Marc A. Calello, Esq. ("Calello") is an individual and citizen of the State of New Jersey and is and was at all relevant times an attorney licensed to practice law in the State of New Jersey.

9. Defendant Calello at all relevant times was engaged in the practice of law as a solo practitioner and\or as Marc A. Calello, P.C.,("the P.C.") a professional corporation organized under the laws of the State of New Jersey engaged in the practice of law in the State of New Jersey, with a principal place of business located at 675 Franklin Avenue, Nutley, New Jersey.

10. Defendant Lindemann at all relevant times held herself out to the public and clients, including Plaintiff Darcy Smith, Ph.D.,  as possessing specialized expertise and experience in matrimonial litigation.

11. Defendant Urbinato at all relevant times held himself out to the public and clients, including Plaintiff Darcy Smith, Ph.D., as possessing specialized expertise and experience in business law matters.


## JURISDICTION

12. The amount in controversy exceeds $75,000, exclusive of interest and costs.

13. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a) based on the diversity of citizenship between the Plaintiff and all Defendants.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

14. Plaintiff Darcy Smith, Ph.D ("Plaintiff Smith") was formerly married to David Kokakis ("Kokakis").

15.  At  all  relevant  times,  Plaintiff  Smith  is  and  was  a licensed social worker engaged in the private practice of providing psychological counseling.

16. During the marriage, Plaintiff Smith and Kokakis owned two restaurants known as "Voro" and "Andavi."

17. Plaintiff Smith and Kokakis were each 35% shareholders in the entity Vose Restaurant, LLC, the entity that owned and operated Voro.  A Matthew McDowell, Esq. and a Eupremio Zizza, Esq. were each 15% shareholders of Vose Restaurant, LLC ("the LLC").  With respect to the ownership and operation of Vose Restaurant, LLC dba Voro, Kokakis, McDowell and Zizza are collectively referred to herein as "Plaintiff's business partners."

18. Plaintiff Smith and Kokakis were the shareholders of 91 Christopher, LLC and\or Bear Restaurant Corp., LLC, which owned and operated Andavi.  Plaintiff Smith was a 98% shareholder and Kokakis was a 2% shareholder.

19. In 2006, Plaintiff Smith retained Defendant Lindemann and Defendant the Weinstein firm to represent her in a divorce action and to negotiate the terms of a Property Settlement Agreement between Plaintiff Smith and Kokakis.

20. At the recommendation of Lindemann, Plaintiff Smith retained Defendant Urbinato and Defendant the Starr firm to represent her with respect to negotiating the business terms of the Property Settlement Agreement, i.e., the business terms for the

-4-

ownership and operation of Voro and Andavi.

21. Defendants Lindemann and Urbinato were negligent in rendering advice and counsel to Plaintiff Smith with respect to the negotiation of the terms of the Property Settlement Agreement and failed to protect the interests of Plaintiff Smith, including but not limited to Plaintiff's rights and liabilities associated with Voro and Andavi

22. The acts and omissions of Defendants Lindemann and Urbinato that were negligent and a failure to properly represent and protect the interests of Plaintiff include but are not limited to:

A. Lindemann failed to appropriately address Plaintiff's concerns that Kokakis concealed assets and misrepresented the financial status of Voro and Andavi, and instead negligently and erroneously represented to Plaintiff that Plaintiff's interests were protected because the Property Settlement Agreement included language that preserved Plaintiff's right to litigate in the future in the event she discovered that Kokakis had concealed assets or otherwise defrauded the Plaintiff.  Plaintiff was subsequently a party to a Chancery Division litigation with Kokakis concerning Voro, in which the trial judge determined that the Property Settlement Agreement included boilerplate language that constituted a waiver of rights by Plaintiff. As a result, Plaintiff incurred legal fees for representation in the litigation and lost an

opportunity to settle the litigation for a substantial sum of money to be paid to the Plaintiff.

B. Contrary to the language of the Property Settlement Agreement which required the proceeds from the sale of the Andavi restaurant to be deposited into the Attorney Trust Account of Urbinato\the Starr firm, Lindemann and Urbinato failed to take any action and failed to notify Plaintiff that the proceeds of sale were instead deposited into the Attorney Trust Account of Ronald Fishman, Esq., Kokakis' business attorney. As a result, unauthorized disbursements, for debts and expenses that were not to be the responsibility of Plaintiff, were made from the proceeds of sale, reducing the amount of the distribution to Plaintiff from the proceeds of the sale.

C. Prior to the execution of a Property Settlement Agreement, Lindemann and Urbinato advised Plaintiff to make payments\disbursements to Kokakis, purportedly for personal marital debt and\or business debt of Andavi and Voro, without verifying the purported debt, nor ensuring that the payments\disbursements were actually used to pay the purported debt.

D. Failure to properly protect Plaintiff's interests with respect to the operation and management of Voro, with the result that Kokakis was able to skim cash from the business and create a false and erroneous impression that Voro was an unprofitable business. As a result, Plaintiff did not receive the share of the

proceeds of the sale of Voro to which she was entitled and was compelled to pay a substantial sum of money in exchange for a General Release and indemnification of any liability associated with Voro.

23. In November of 2006, Plaintiff Smith discharged Defendant Lindemann and the Weinstein firm and retained Defendant Calello and\or the PC to represent her with respect to: 1)enforcing Plaintiff's rights and Kokakis' obligations under the terms of the Property Settlement Agreement ("Family Law action"); 2) to stop the ongoing defrauding of Plaintiff by Plaintiff's business partners with respect to the operation and management of Voro ("the Voro litigation"); and 3) to seek relief for suspected fraud committed by Kokakis in misrepresenting to Plaintiff that the continued operation of Andavi required capital contributions from Plaintiff ("the Andavi litigation").

24. Defendant Calello introduced the Plaintiff to another attorney with whom he shared office space, Alfonse A. DeMeo, Esq. ("DeMeo").  It was agreed that Calello would represent Plaintiff with respect to the Family Law Action and the Voro litigation and DeMeo would represent Plaintiff with respect to the Andavi litigation.

25. The Family Law action was concluded in early 2007.

26. With respect to the Voro litigation, Plaintiff terminated

–7–

Calello in January of 2008 due to dissatisfaction with his representation, which included but was not limited to Calello filing pleadings out of time, attending court appearances not adequately prepared, requesting adjournments of hearings without Plaintiff's consent, failure to respond to Plaintiff's communications regarding the status of the litigation, and failing to timely notify Plaintiff of Motions filed by the defendants in the Voro litigation.  At the time Plaintiff discharged Calello from his representation of her in the Voro litigation, there was a trial date of January 22, 2008.

27. Plaintiff then retained DeMeo to represent her in the Voro litigation.  Calello persuaded Plaintiff that Calello should remain "counsel of record" on her behalf in the Voro litigation.  Based on Calello's recommendation, Plaintiff agreed that Calello would remain as "counsel of record" and understood that the actual work to represent Plaintiff's interests in the litigation would be performed by DeMeo.  Calello did not inform the Plaintiff that as "counsel of record", Calello would continue to bill the Plaintiff when DeMeo was actually performing the work, resulting in double and excessive billing to the Plaintiff.

28. After the presentation of Plaintiff's evidence in the Voro trial, the trial judge strongly urged the parties to settle, indicating that based on the boilerplate waiver language in the Property Settlement Agreement, he would likely strike all evidence

-8-

relating to events which occurred prior to  the Property Settlement Agreement and limit evidence to events that occurred after the Property Settlement Agreement was entered into.

29. With no leverage for negotiation in light of the trial judge stating his intent to limit the evidence to events that occurred after the Property Settlement Agreement, Plaintiff had no choice but to accept a settlement of the Voro litigation that included payment of a sum of money that was far less than what the defendants in the Voro litigation had offered in settlement previously.

30. The terms of the settlement of the Voro litigation were placed on the record before the trial judge in January of 2008.

31. Calello engaged in negotiations with counsel for the defendants in the Voro litigation for a written Settlement Agreement to memorialize the terms of the settlement placed on the record in court in January of 2008.  When counsel for the parties could not agree on the terms of the written memorialization of the terms of the settlement, Calello submitted a proposed Consent Order to the court, without first providing the proposed Consent Order to the Plaintiff for review and without obtaining Plaintiff's consent and authorization.  The terms of the Consent Order prepared by Calello and submitted to the court deviated in material ways from the terms of the settlement placed on the record in court in January of 2008.  The material deviations of the terms of the

Consent Order consisted of both the inclusion of terms that were not terms agreed to by Plaintiff as part of the settlement, and the omission of material terms that were agreed to by all parties as part of the settlement.

32. The trial judge ultimately executed the proposed Consent Order submitted by Calello, with the result that Plaintiff became bound, without her knowledge, authorization or consent, to the terms set forth in the Consent Order, which materially deviated, to the Plaintiff's economic detriment, from the settlement terms recited on the record in court in January of 2008.

33. In July of 2008, unknown to the Plaintiff, Plaintiff's business partners filed Motions seeking relief against the Plaintiff in the Voro litigation.

34. Notwithstanding that he had never been relieved by the court as "counsel of record" for the Plaintiff in the Voro litigation, Calello, without informing the Plaintiff, advised counsel for the defendants in the Voro litigation that he had not been retained as counsel for the Plaintiff, and Calello refused to accept service of the Motions, suggesting that the defendants' attorney serve the Plaintiff personally.

35. Calello unreasonably failed to appropriately and timely advise Plaintiff or DeMeo that the Motions had been filed, as a result of which there was inadequate time for the timely preparation and filing of opposition to the Motions.  Calello

delayed until the day before the opposition was due to write to the court to request an adjournment, and failed to follow up to determine whether or not the request for an adjournment was granted.   The requested adjournment was not granted, and both Motions  were decided by the Court as unopposed.   As a result, Plaintiff incurred additional legal fees to DeMeo to file Motions for Reconsideration.

36.  Despite being advised by Plaintiff that he was not authorized to deduct from the proceeds of the sale of Andavi legal fees he claimed to be due and owing to him, Calello exerted economic duress by delaying and refusing to disburse to Plaintiff the monies that were the proceeds  of the sale of Andavi and which monies belonged to the Plaintiff.   Knowing Plaintiff needed the funds, Calello caused Plaintiff to be subject to economic duress and refused to disburse to the Plaintiff monies that belonged to the Plaintiff until Plaintiff felt compelled to agree to Calello deducting a portion of the proceeds to pay to himself.

37. In addition to economic damages sustained as a result of Calello's negligent acts and omissions, Plaintiff suffered emotional distress requiring psychological treatment and incurred expenses for treatment.   In addition, Plaintiff suffered lost income because the emotional distress limited her ability to work professionally providing psychological counseling.

## FIRST COUNT

38.   The Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 37 as though set forth at full length herein.

39. Defendants Lindemann, Urbinato, and Calello each had a duty to exercise that degree of reasonable knowledge, skill and expertise ordinarily possessed by attorneys similarly situated in their respective representation of the Plaintiff.

40. Defendants Lindemann, Urbinato, and Calello each breached their duty to exercise that degree of reasonable knowledge, skill and expertise ordinarily possessed by attorneys similarly situated in their respective representation of the Plaintiff.

41.   The  breaches  of  duty  by the  Defendants  Lindemann, Urbinato, and Calello caused and\or were a substantial factor in causing economic harm sustained by the Plaintiff.

42. The breaches of duty by Defendant Calello caused and\or were a  substantial  factor  in  causing  the  Plaintiff  to  suffer emotional distress and loss of professional income as a result of the emotional distress.

43. The Defendant the Weinstein firm is vicariously liable for the breaches of duty by Lindemann.

44. The Defendant the Starr firm is vicariously liable for the

breaches of duty by Urbinato.

45. The Defendant the PC is vicariously liable for the breaches of duty by Calello.

WHEREFORE, the Plaintiff Darcy Smith, Ph.D demands judgment against all Defendants jointly, severally and in the alternative for:

A. Compensatory damages;

B. The return of legal fees paid to the Defendants;

B. Attorneys fees and costs for the prosecution of the legal malpractice claims ;

C. Interest;

D. Such other relief as may be deemed equitable and just.

## SECOND COUNT

46. The Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 45 as though set forth at full length herein.

47. The Defendants Lindemann, Urbinato, and Calello each deviated from the accepted standards of legal practice for attorneys in the representation of Plaintiff.

48. The deviations from accepted standards of legal practice by each of the Defendants caused and\or were a substantial factor in the economic harm sustained by the Plaintiff.

49. The deviations from accepted standards of legal practice by Defendant Calello caused and\or were a substantial factor in

causing the Plaintiff to suffer emotional distress and loss of professional income as a result of the emotional distress.

50. The Defendant the Weinstein firm is vicariously liable for the deviations from accepted standards of legal practice by Lindemann.

51. The Defendant the Starr firm is vicariously liable for the deviations from accepted standards of legal practice by Urbinato.

52. The Defendant the PC is vicariously liable for the deviations from accepted standards of legal practice by Calello.

WHEREFORE, the Plaintiff Darcy Smith, Ph.D demands judgment against all Defendants jointly, severally and in the alternative for:

A. Compensatory damages;

B. The return of legal fees paid to the Defendants;

B. Attorneys fees and costs for the prosecution of the legal malpractice claims ;

C. Interest;

D. Such other relief as may be deemed equitable and just.

## JURY DEMAND

The Plaintiff demands a trial by jury of all issues so triable.


Date: June 29 ,2010

                              /s/Diane Marie Acciavatti, Esq.
                                 Diane Marie Acciavatti, Esq.
                                 Attorney for Plaintiff

### CERTIFICATION PURSUANT TO LOCAL RULE 11.2


        Pursuant to Local Rule 11.2, the undersigned hereby certifies that matter in controversy is not currently the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.  The matter in controversy was previously the subject of an action captioned Marc A. Calello, Esq., P.C. v. Dr. Darcy Smith, Superior Court of New Jersey, Law Division, Essex County, Docket No. ESX-L-10202-08, which action was dismissed to proceed to arbitration by an Order filed on July 17, 2009, and the subject of an ex parte "arbitration" proceeding in which Plaintiff Darcy Smith, Ph.D did not participate.


Date: June 29 ,2010

                              /s/Diane Marie Acciavatti, Esq.
                                 Diane Marie Acciavatti, Esq.
                                 Attorney for Plaintiff