UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DARCY SMITH, PH.D, | : | |
| Plaintiff, | : | Civil Action No. 10-3319 (FSH) |
| v. | : | |
| CYNTHIA BORSELLA LINDEMANN, ESQ., ET AL., | : | OPINION & ORDER ON INFORMAL APPLICATION |
| Defendants. | : | |

This matter having come before the Court by way of letter of Defendants Urbinato and Starr for leave to file a Third-Party Complaint against Laurence M. Smith Esq. and Wolff & Samson, P.C. pursuant to Fed. R. Civ. P. 14 and 15;[1]

---

[1] On June 29, 2010, Plaintiff filed a Complaint alleging that Defendants committed legal malpractice during her divorce proceedings. (Compl. ¶¶ 2–11, 22, June 29, 2010, ECF No. 1.) Specifically, Plaintiff alleges that Cynthia Borsella Lindemann ["Lindemann"] and Steven Urbinato ["Urbinato"] provided negligent representation with respect to the terms of a property settlement agreement. (Id. ¶ 21.)

On June 10, 2011, Urbinato and his firm, Defendant Starr, Gern, Davison & Rubin, P.C. ["Starr"], filed a motion for leave to file a Third-Party Complaint for contribution and indemnification against (1) Laurence M. Smith, Esq. ["Smith"], Plaintiff's brother, and (2) Smith's law firm, Wolff & Samson, P.C. ["Wolff & Samson"], based on vicarious liability. (Defs.' Mot., June 10, 2011, ECF No. 63.) By way of letter dated June 17, 2011, Lindemann and her firm, Defendant Weinstein, Snyder, Lindemann, & Sarno, joined the motion for leave to file a Third-Party Complaint. (Defs.' Letter, June 17, 2011, ECF No. 67.) On June 30, 2011, the Court terminated the motion, in part, because the parties asked the Court to consider materials beyond those permitted by Pension Benefit Guaranty Corp. v. White Consolidation Indus., 998 F.2d 1192, 1196–97 (3d Cir. 1993). (Order, June 30, 2011, ECF No. 75.) Simultaneously, the Court terminated Plaintiff's opposition for being untimely. (Id. at 5.) The Court directed the parties to re-file their submissions mindful of the limited record it may consider under Pension Benefit. (Id. at 6.)

and the Court having considered the record, the parties' submissions, and the governing law;[2]

and the standards under Rule 15 governing motions to amend an answer and file a Third-Party Complaint under Rule 14, see Ryan v. Collucio, 183 F.R.D. 420, 423 (D.N.J. 1998);

and Rule 15(a) stating, in pertinent, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2);

and the Court having the discretion to determine whether to grant leave to amend the original pleadings, Foman v. Davis, 371 U.S. 178, 182 (1962);

---

On July 7, 2011, Urbinato/Starr Defendants re-filed their application for leave to file a Third-Party Complaint. (Defs.' Letter, July 7, 2011, ECF No. 76.) On July 14, 2011, Plaintiff filed a letter in opposition. (Pl.'s Letter, July 14, 2011, ECF No. 78.)

[2] The Urbinato/Starr Defendants argue that the Court should grant them leave to file the proposed Third-Party Complaint against Smith for contribution because (1) there was an implied attorney-client relationship between Smith and Plaintiff, (2) Smith provided legal services to Plaintiff that were contemporaneous with and the same nature as Defendants' services, and (3) Plaintiff's contrary assertions create a "fact question . . . not an issue of futility." (Defs.' Letter 1–3.) The Urbinato/Starr Defendants also argue that Smith's firm, Wolff & Samson, is vicariously liable because Smith's legal services were provided in the course of his employment at this firm. (Id. at 3.) The defendants made no arguments in support of their claim for indemnification.

In response, Plaintiff argues that the Court should deny leave to file the proposed Third-Party Complaint because (1) Smith and Plaintiff never had an attorney-client relationship, (2) Defendants' allegations of such a relationship are merely speculative, and (3) Defendants' have "utterly fail[ed] to follow the protocol explicitly set forth by the Court." (Pl.'s Letter 2–3.) Specifically, Plaintiff asserts that the proposed pleading provides an "inaccurate characterization" of Smith's deposition testimony, that without these characterizations the pleading is futile, and that Plaintiff is unable to rebut such characterizations because she could not cite to the deposition under the Court's June 30, 2011 Order. (Id.) Plaintiff also argues that Defendants' claims for unpaid fees pursuant to retainer agreements contrasts with the lack of such a written agreement between Smith and Plaintiff. (Id. at 3.)

2

and the Court noting that leave to amend may be denied where there is: (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, or (4) futility of amendment, see id.;

and there being no assertion of undue delay, undue prejudice, bad faith, or dilatory motive;

and the Court having directed the parties to address Plaintiff's assertion that the proposed Third-Party Complaint is futile, see Order, June 30, 2011, ECF No. 75;

and the Court considering an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face," Harrison Beverage Co. v. Dribeck Imps. Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (internal citations and quotations marks omitted);

and in determining whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss, In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997), which requires the Court to decide not whether the movant will ultimately prevail, but rather whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (1955);[3]

---

[3] A two-part analysis determines whether this standard is met. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)). First, a court separates the factual and legal elements of a claim. Fowler, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard any legal conclusions. Id. at 210–11; Iqbal, 129 S. Ct. at 1949 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" (internal quotations marks and alterations omitted)).

Second, as stated above, a court must determine whether the plaintiff's complaint articulates "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; accord Fowler, 578 F.3d at 210. As the Supreme Court instructed in Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

and the Court finding that the factual allegations against Laurence M. Smith, Esq., are sufficient to set forth a plausible claim for relief for contribution, but not indemnification;[4]

---

the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949. Although this is not a "probability requirement," the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct" to make a showing of entitlement to relief. Id. at 1949–50 (citations and internal quotation marks omitted). This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

[4] Under Twombly/Iqbal's two-part analysis, the Court first separates the factual and legal elements of a claim, disregarding legal conclusions and accepting factual allegations as true. Fowler, 578 F.3d at 210–11. In pertinent part, Defendants factually alleges that:

- Smith recommended Lindemann and Urbinato to Plaintiff. (Proposed Third-Party Compl. ¶¶ 14–15, July 7, 2011, ECF No. 76.)

- Plaintiff sought from Smith, and he provided, legal services to Plaintiff during her divorce "with respect to many aspects . . . including . . . [her] rights as memorialized in the Property Settlement Agreement." (Id. ¶¶ 16–17.)

- Smith testified in his May 31, 2011 deposition, that he had drafted and negotiated contracts for many years, gave his impressions of the property settlement agreement "to make sure [Plaintiff's] interest was adequately protected," suggested changes to the agreement, marked the agreement up with many questions and comments, and directly communicated with Urbinato and Lindemann about Plaintiff's divorce and the agreement specifically. (Id. ¶ 18.)

- Smith attended at least one meeting with Plaintiff and Defendants at which time the property settlement agreement was reviewed and discussed. (Id. ¶ 21.)

- "Laurence Smith, Esq. made changes to the Property Settlement Agreement . . . [and] [t]he final Property Settlement Agreement reflected the changes and revisions made and recommended by Laurence Smith, Esq." (Id. ¶¶ 27–28.)

- Plaintiff knew of Smith's involvement and relied upon his advice. (Id. ¶ 29.)

- Plaintiff sent an email to Lindemann the day before a meeting between Plaintiff, Lindemann, Urbinato, and Smith, in which Plaintiff stated that "I feel like most of what needs to happen will be you [Lindemann] and steve [Urbinato] filling larry [Smith] in so that he can make an informed decision on the position that I should take." (Id. ¶ 31.)

4

and Plaintiff's objections to this application not changing the result;[5]

---

Under the second part of the analysis, the Court considers whether these facts "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. According to Defendants' factual allegations, Defendants and Smith provided Plaintiff with legal advice concerning the property settlement agreement, Smith made recommendations and changes to the agreement to protect Plaintiff's interests, Smith's changes were memorialized in the final agreement, and Plaintiff knew and relied upon Smith's advice. (Proposed Third-Party Compl. ¶¶ 14–31.) These allegations are more than sufficient under Twombly/Iqbal to establish a "plausible" claim for relief that Smith may be liable to Plaintiff for injury stemming from defects in the property settlement agreement, and thus may be jointly liable with the Urbinato/Starr Defendants, given his simultaneous and coordinated legal advice on the matter about which Plaintiff complains. See Cameron v. Chapman, 2010 WL 909137, at *7 (N.J. Super. Ct. App. Div. Mar. 17, 2010) (lawyers can be joint tortfeasors where the resulting harm is the same, and occurred "from essentially the same transaction at essentially the same time"); cf. Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 76 (2004) (finding that "separate acts of [legal] malpractice cannot constitute the 'joint liability' required for the imposition of contribution liability under the [Joint Tortfeasors Contribution Law]").

As to the claim for indemnification, the factual allegations are insufficient to support such a claim, and the Urbinato/Starr Defendants made no argument otherwise. A claim for common law indemnification allows a person held liable for a wrongdoer's misconduct to seek reimbursement from the wrongdoer under certain circumstances. Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 566 (1980); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960); Centr. Motor Parts Corp. v. E.I. duPont deNemours & Co., 251 N.J. Super. 5, 9, 12 (App. Div. 1991). The party seeking indemnification must not be personally at fault. Cartel Capital, 81 N.J. at 566. The liability between the wrongdoer and the person seeking indemnification may be constructive, technical, imputed or vicarious, Alder's Quality Bakery, 32 N.J. at 80, however, the liability must arise from either (1) an explicit contractual provision, (2) some special legal relationship, (3) some positive rule of law, or (4) the wrongdoer's failure to discover or correct a defect or remedy a dangerous situation. See Allied Corp. v. Frola, Civ. No. 87-462, 1993 WL 388970, at *10 (D.N.J. Sept. 21, 1993) (stating that "[r]elationships typically supporting this right include principal-agent, bailor-bailee, lessor-lessee, union-union member and employer-employee"); Alder's Quality Bakery, 32 N.J. at 80; Ruvolo v. U.S. Steel Corp., 133 N.J. Super. 362, 367–68 (Law Div. 1975); see also Ryan v. United States, 233 F. Supp. 2d 668, 686 (D.N.J. 2002) (noting that the bare existence of contract between parties does not constitute a special relationship). Here, while Defendants deny that they are liable to Plaintiff, they have failed to allege any facts and provided no law showing a special relationship existed (whether by explicit contract or implied by law) between Defendants and Smith. Defendants allege only that they were "co-counsel" with Smith. (Defs.' Letter 3.) Without more, the Court finds the facts as alleged are insufficient to state a basis for indemnification and the Urbinato/Starr Defendants have provided no argument that they suffice.

and the Court finding that the factual allegations against Wolff & Samson are not sufficient to set forth a plausible claim for relief;[6]

---

[5] Plaintiff misunderstands both the holding of Pension Benefit and the June 30, 2011 Order applying it. The June 30, 2011 Order meant to correct the conduct of both parties in their earlier motion practice, namely, arguing the merits of the proposed pleading with voluminous opposing certifications that contained facts outside the proposed pleading itself. To correct this, the Court instructed the parties that it would only consider factual allegations asserted within the confines of the pleading unless it is a matter of public record or undisputedly authentic. (Order 6, June 30, 2011, ECF No. 75 ("[t]he Court will not consider evidence outside of the proposed pleading unless it is a matter of public record or undisputably authentic").) Plaintiff asserts that she "is placed at a severe disadvantage . . . because plaintiff's counsel must comply with the Court's directive not to cite to matters outside the pleading." (Pl.'s Letter 2.) In applying the Rule 12(b)(6) standard, Pension Benefit permits a court to "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the [] claims are based on the document." Pension Benefit, 998 F.2d at 1196. Thus, when Defendants quoted or referred to Smith's deposition in the proposed Third-Party Complaint, they embraced it as authentic. Thus, Plaintiff could have provided deposition testimony rebutting characterizations in the proposed pleading. See id. at 1196–97 (stating that "[w]hen a complaint relies on a document, however, the [third-party] plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished"). Nothing precluded Plaintiff from presenting authentic evidence to support her futility argument.

Moreover, Plaintiff's argument fails to acknowledge that Defendants' proposed pleading is based on more than just characterizations from Smith's deposition. The proposed pleading also contains direct quotes from Smith and factual allegations that are independent of the deposition itself, such as Plaintiff's email to Lindemann. (See, e.g., Proposed Third-Party Compl. ¶ 31 (stating that Plaintiff "feel[s] like most of what needs to happen will be you [Lindemann] and steve [Urbinato] filling larry [Smith] in so that he can make an informed decision on the position that I should take").) Lastly, the Court reminds Plaintiff that, on this type of motion, the Court must assume the truth of well-pleaded factual allegations. Iqbal, 129 S. Ct. at 1949; accord Fowler, 578 F.3d at 210–11.

[6] As to Wolff & Samson, in the proposed Third-Party Complaint, Defendants merely alleges that:

- Smith is a partner, member, shareholder, and/or employee of Wolff & Samson. (Proposed Third-Party Compl. ¶ 10.)

- "Plaintiff has been a client of Wolff & Samson, P.C." (Id. ¶ 13.)

IT IS THEREFORE on this 27th day of July, 2011

ORDERED that the Urbinato/Starr Defendants' motion for leave to file a Third-Party Complaint [Docket No. 76] is granted as to the claim for contribution against Laurence Smith, Esq., but denied as to the claim for indemnification against Laurence Smith, Esq., and as to the claims against Wolff & Samson;

IT IS FURTHER ORDERED that the Urbinato/Starr Defendants shall file their Answer

---

- "At all times relevant to this matter, the legal services provided by Laurence Smith, Esq. to plaintiff were done in the course and scope of his employment at Wolff & Samson, P.C." (Id. ¶ 20.)

These facts are insufficient for the Court "to draw the reasonable inference that the [proposed] defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Specifically, Defendants broadly allege that Smith, Plaintiff's brother (Proposed Third-Party Compl. ¶ 8), provided services at issue in the course and scope of his employment with Wolff & Samson, but provide no facts upon which this is based. Defendants assert that Smith provided legal services and is a partner at a law firm and simultaneously allege that Smith is a lawyer who provided legal services to Plaintiff, his sister. Thus, the facts are equally consistent with a conclusion that Smith provided advice to his sister outside his capacity as a Wolff & Samson lawyer as they are with the claim he provided services in his capacity as a partner at Wolff & Samson. Under Twombly, the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct" to make a showing of entitlement to relief. Id. at 1949–50.

Furthermore, although the proposed pleading alleges Plaintiff "has been a client of Wolff & Samson[,]" (Proposed Third-Party Compl. ¶ 13), it does not allege Plaintiff was a client of Wolff & Samson at the time of the services at issue. Moreover, Defendants' previous pleading referred to emails sent to and from Smith's Wolff & Samson e-mail account (see Proposed Third-Party Compl. ¶ 10, June 10, 2011, ECF No. 63), but such allegations are absent from the present proposed pleading. The Court will not consider the prior assertion about the emails as they are now outside the proposed pleading and Defendants, as "the master[s] of [their] Complaint . . . may plead as [they] choose[]." Salibello Consulting Assocs. v. Shenfeld, Civ. No. 10-4162, 2010 WL 5466848, at *4 (D.N.J. Dec. 30, 2010). The Court makes no finding as to whether allegations about the emails would have nudged Defendants' contribution claim against Wolff & Samson "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. For these reasons as well as those above concerning the claim for indemnification, the facts as alleged do not set forth plausible claims against Wolff & Samson.

to the Amended Complaint and their Third-Party Complaint no later than **August 3, 2011**; and

IT IS FURTHER ORDERED that all other deadlines shall remain unchanged. When the Third-Party Defendant enters an appearance, the parties shall request a telephone conference.

                                                      s/Patty Shwartz
                                                      **UNITED STATES MAGISTRATE JUDGE**