# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SMITH, PH.D.<br><br>                    Plaintiff,<br><br>v.<br><br>LINDEMANN, ESQ. et al.<br><br>                    Defendant. | Civ. No.  10-CV-3319 (KM)<br><br>**O P I N I O N** |

*Appearances by:*

Diane Marie Acciavatti, Esq.
Diane Marie Acciavatti, LLC
401 Hamburg Turnpike, Suite 302
Wayne, NJ 07470

   *Attorney for Plaintiff*

Gerald James Gunning, Esq.
Stein, McGuire, Pantages & Gigl, LLP
354 Eisenhower Parkway
Livingston, NJ 07039

   *Attorney for Defendants*


**DEBEVOISE, Senior District Judge**

The case arises out of an alleged legal malpractice claim against the remaining defendant in this matter, Mark A. Calello, Esq., and his law firm.  The matter comes before the Court on Mr. Calello's motion to dismiss the complaint and compel arbitration, however the Court treats the action as a motion to stay and compel arbitration.  The plaintiff, Dr. Darcy Smith, argues that the arbitration clause is invalid and unenforceable as a matter of law.  In the alternative, Dr. Smith argues that Mr. Calello waived his right to arbitration based on his litigious conduct,

delay, and the prejudice it would cause her.  For the following reasons, the Court stays the matter and compels arbitration.

## I.    BACKGROUND

### A.  Factual History

This case involves a joined legal malpractice action brought by Dr. Darcy Smith against four attorneys and their respective law firm affiliations. Dr. Smith successively retained and terminated the four defendant attorneys to handle a contentious divorce and a related business matter regarding marital assets jointly owned with her ex-husband, Mr. David Kokakis.  The defendant attorneys subsequently filed various cross-claims for contribution and indemnification, and counter-claims against Dr. Smith for outstanding legal fees.  Additionally, Third-Party Complaints were filed against Dr. Smith's brother, Lawrence Smith, Esq., as a joint tortfeasor for contribution for the contemporaneous legal advice provided during the course of the underlying dispute.  Dr. Smith has since settled her legal malpractice claims against three of the defendant attorneys, and the Third-Party Complaints have been dismissed.  The remaining defendants are Mr. Calello and his law firm.  For the purposes of this opinion, the Court treats them as one and the same.

The matter comes before the Court today on Mr. Calello's motion to dismiss the complaint and compel arbitration.  The crux of the issue is the enforceability of an arbitration clause entered into between Dr. Smith and Mr. Calello.  Dr. Smith opposes the motion and argues that the arbitration clause is invalid and unenforceable because arbitration clauses cannot encompass legal malpractice claims as a matter of law.  In the alternative, Dr. Smith contends that Mr. Calello has waived his right to rely upon the arbitration clause by his delay, litigious conduct, and based on the prejudice it would cause her.

Before examining the nature of the arbitration clause at issue, the Court briefly observes the underlying series of events.  Rather than dispute these underlying facts, Dr. Smith argues that they are irrelevant to the present matter regarding the enforceability of the arbitration clause. The Court concisely sets forth the factual history for the purposes of clarifying the procedural history, the context under which the arbitration clause arose, and the ongoing exchanged services between Mr. Calello and Dr. Smith.

In or about early 2006, Dr. Smith initially retained Cindy Lindemann, Esq. to represent her in a divorce action.  Ms. Lindemann recommended that Dr. Smith additionally retain Steven Urbinato, Esq., a business attorney, to represent her in related matters regarding marital assets in business interests in s restaurants located in New York City (Andavi) and in South Orange (Voro).  By July 2006, settlement negotiations were underway.  Accordingly, Ms. Lindemann prepared a draft Property Settlement Agreement ("PSA") to which Mr. Urbinato contributed certain clauses.  When a dispute arose to the exact terms of the PSA, a motion was submitted to enforce the agreement.

Apparently dissatisfied with the services of Ms. Lindemann and Mr. Urbinato, Dr. Smith retained Mr. Calello to represent her in an imminently pending Motion for Reconsideration filed by her ex-husband, in which he sought to vacate a settlement reached between the parties. Accordingly, Mr. Calello and Dr. Smith signed a written retainer agreement which includes the arbitration clause at issue today.

The Arbitration Clause within the Calello-Smith Retainer Agreement sets forth:

> Arbitration of Differences Between the Client and the Law Firm.
> Should any differences, disagreement, or dispute between you and
> the Law Firm arise as to its representation of you, or on account of
> any other matter, you agree to submit such disagreements in
> binding arbitration.

(A) <u>Fee Dispute</u>.  Should an issue arise relative to fees and costs that cannot be resolved between you and the Law Firm, you agree to file the applicable papers with the appropriate Fee Arbitration Committee established by the New Jersey Rules of Court within 10 days of the law Firm's request that you do so in order to have such issue resolved in that forum.  Should the Fee Arbitration Committee refuse to accept jurisdiction, or such difference involved a matter other than fees and costs, you or the Law Firm may submit the dispute to binding arbitration governed by the *New Jersey Uniform Arbitration Act, N.J.S.A. 2A:24-1 et seq.*  An arbitrator shall be chosen by consent of the parties or in accordance with N.J.S.A. 2A:24-5, the fees for which shall be an issue to be determined by the arbitrator.  Any arbitration award shall be confirmed by the Superior Court of New Jersey in accordance with *N.J.S.A. 2A24-8* [sic], and a judgment entered in accordance with *N.J.S.A.* 2A:24-2&10 [sic].

(B) <u>Any Other Disagreements</u>.  Should an issue arise between you and the Law Firm as to any matter other than a fee dispute, you agree to submit such dispute(s) to binding arbitration in accordance with the laws and procedures set forth in the immediately preceding paragraph.

Signing of this Agreement will constitute your acknowledgement that you have an absolute right in the first instance (and obligation under this Agreement) to submit any fee disputes between you and the Law Firm to the appropriate Fee Arbitration Committee for resolution, and should that method not be available, you ro the Law Firm have the obligation to submit any fee or other dispute to binding arbitration as set forth in this Section instead of and in place of submitting such issues for resolution by the court.  Signing of this Agreement will be deemed your consent to the methods of alternative dispute resolution set forth in this Section, and constitutes a waiver on your part and on the part of the Law Firm to have such disputes resolved by a court which might include having the matter determined by a jury.

(MTD Ex. C, Retainer Agreement.)

The retainer was prepared by Mr. Calello, dated November 27, 2006, and signed by Dr. Smith

two days later on November 29, 2006.  Mr. Calello immediately responded to the pending

motion which had a return date of December 6, 2006.  The matter proceeded through discovery until it was set for trial in January 2008.

However, at some point in early 2008, Dr. Smith discharged Mr. Calello and retained Alfonse A. Demeo, Esq. to try the case.  Although Dr. Smith discharged Mr. Calello, she continued to engage him in pending matters.  A settlement was eventually achieved in the underlying marital and business matters in summer of 2009.

After his discharge, Mr. Calello filed a civil action against Dr. Smith for outstanding legal fees. Initially, Mr. Calello obtained a default judgment against Dr. Smith based on her failure to appear.  However, Dr. Smith appeared *pro se* on a motion to vacate the judgment.  At oral argument, the Judge read aloud the Calello-Smith arbitration clause.  Evidently, it was on the basis of that clause that the default judgment was vacated and the action for legal fees was dismissed.[1]  Calello v. Smith, Superior Court of New Jersey, Law Division, Essex County, Docket No. ESX-L-10202-08 (July 17, 2009).  Thereafter, Dr. Smith refused to participate in arbitration and the matter proceeded without her, resulting in an arbitration award in favor of Mr. Calello for outstanding legal fees.

There remains a legal malpractice claim against Mr. Calello.  The merit of that allegation is not before the Court.[2]  There also remains Mr. Calello's counterclaim for judgment on the

---

[1]      The Court notes that the parties do not contest this finding, however the Court has not been presented with the hearing transcript or any documents related to the outcome reached by the Chancery Division.

[2]      Dr. Smith raises multiple contentions against Mr. Calello to support her legal malpractice claim.  For example, Dr. Smith argues that Mr. Calello submitted a proposed Consent Order to the court without first providing it to her for review, and that the terms of the order deviated in material ways from the terms of a settlement previously placed on the record in court in January 2008.  (Am. Compl. ¶ 33.)  Additionally, Dr. Smith contends that Mr. Calello failed to timely advise her or Mr. DeMeo of the filing of a motion, resulting in inadequate time for timely preparation and filing of an opposition brief, the denial of a request for an adjournment, and a judicial decision on the unopposed motion. (Am. Compl. ¶ 37.)

outstanding arbitration award (count one).  Mr. Calello's additional counterclaims are for libelous conduct resulting from Dr. Smith's filing of an ethics complaint which was later dismissed, in an attempt to intimidate him to drop his lawsuit for legal fees (count two), and for harassment which caused Mr. Calello to expend time and money defending himself and intentionally or negligently interfered with his business and ability to earn a living and support his family (count three).

### B.  Procedural History

On June 29, 2010, Dr. Smith instituted suit against Ms. Lindemann, Mr. Calello, Mr. Urbinato, and their respective law firms. (ECF 1.)  Thereafter, Mr. Urbinato and Ms. Lindemann answered and filed cross claims and counterclaims. (ECF 8, 10, 12, 27.)  On April 5, 2011, default judgment was entered against Mr. Calello for failure to plead or otherwise defend. However, the default judgment was vacated that afternoon pursuant to a telephone conference. (ECF 46.)  On April 18, Mr. Calello filed an answer, counterclaim, and cross-claims against all defendants for comparative negligence as joint tortfeasors. (ECF 48.)   The answer includes various affirmative defenses such as failure to state a claim upon which relief may be granted, and references the arbitration clause at issue within the counterclaims.

On June 16, 2011, Mr. Calello filed a *pro se* letter advising the Court of his intent to file a motion seeking dismissal of the complaint pursuant to the arbitration clause.  (ECF 64.)  The Court instructed that Dr. Smith and Mr. Calello "shall be prepared to discuss the proposed motion to dismiss based upon an arbitration/mediation clause" in a telephone conference the following day. (ECF 65.)  On June 20, 2011, the Court entered an additional order which set forth that Mr. Calello "shall notify the Court no later than the September, 2011 telephone

conference if he intends to file a motion to dismiss based upon the arbitration dispute resolution clause contained in his retainer agreement with the plaintiff[.]" (ECF 68 at 2.)

On August 3, 2011, Dr. Smith entered an amended complaint against all defendants, and added Mr. Demeo and his law firm to the matter. (ECF 85.)

On August 7, 2011, Mr. Calello ended his *pro se* representation and filed a substitution of attorney.  (ECF 95.)  On August 24, 2011, the Court ordered that Mr. Calello "shall notify the Court no later than the September 21, 2011 telephone conference if he intends to file a motion to dismiss based upon the alternative dispute resolution clause contained in his retainer agreement with the plaintiff[.]" (ECF 103 at 1.)  Thereafter, on September 22, 2011, the Court noted that it was "advised that defendant Calello is contemplating filing motion to compel arbitration pursuant to his retainer agreement that defendant DeMeo may join[.]" (ECF 117.)

On December 16, 2011, a joint status report was filed which notes that "Defendant Calello's Retainer Agreement contains an arbitration clause requiring any disputes, i.e., malpractice claims and legal fee disputes to be arbitrated.  It is Plaintiff's position that the arbitration clause is void and unenforceable under Kamaratos v. Palias, 360 N.J. Super. 76 (App. Div. 2003)." (ECF 123 at 2.)

Between March 28, 2012 and April 23, 2012, various stipulations and orders dismissing outstanding claims, cross-claims, counterclaims, and the third party action against Mr. Smith were filed.  On April 20, 2012, amidst this activity, Mr. Calello sought leave to file a motion to dismiss based upon the alternative resolution clause.  The letter noted the previous September 21, 2011 notification deadline, however explained that "Mr. Calello choose [sic] not to file such a Motion previously in light of the co-defendants cross claims as well as the third party actions. As the actions against all of the co-defendants are resolved and we are in the process of issuing a

dismissal as to our third party action, clearly the situation has changed." (ECF 145.)  At first, on April 26, 2012, the Court granted Mr. Calello leave to file the motion to dismiss, and set a briefing schedule and a deadline for the filing of Daubert motions.  (ECF 151.)  However the next day, the Court vacated the deadlines associated with the filing of the Daubert motions, the submission of the joint proposed final pretrial order, and the final pretrial conference until resolution of the motion to dismiss based on the arbitration clause.  (ECF 152.)  The Court set a May 11, 2012 deadline for the motion to dismiss.  When Dr. Smith subsequently filed a motion in limine, the Court administratively terminated the motion and deemed the request for an extension moot, based on the vacated briefing schedule.  (ECF 159.)  Accordingly, on May 10, 2012, Mr. Calello timely filed the motion to dismiss based upon the arbitration clause.

## II.    DISCUSSION

### A.  Standard of Review

The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitration." John Hancock Mut. Life Ins. Co. v. Olick, 151 F. 3d. 132 (3d Cir. 1998) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983).  The operative language in the Act is found in section two, and provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Supreme Court has described Section 2 as reflecting both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract."

AT&T Mobility LLC v. Conception, 131 S. Ct. 1740, 1745 (2011) (internal quotations and citations omitted).  The final phrase of Section 2 provides a savings clause which "permits agreements to arbitration to be invalidated by 'generally applicable contract defenses, such as fraud, duress or unconscionability[.]'" Id. at 1746 (citation omitted).

When a contract contains an arbitration clause, a "presumption of arbitrability" arises, which can only be overcome if the court can determine with "positive assurances" that the clause does not cover the dispute at issue.  AT&T Techs. V. Communs. Workers of Am., 475 U.S. 643, 650 (1986).  See also Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25 ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")

"Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (internal reference omitted).  To determine whether an arbitration clause is binding on the parties to a dispute, "[a] federal court must generally look to the relevant state law on the formation of contracts." Blair v. Scott Specialty Gases, 283, F.3d 595 (3d Cir. 2002).  To determine whether a particular claim falls within the scope of an arbitration agreement, the focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint.  Medtronic Av, Inc. v. Advanced Cardiovascular Systems, 247 F.3d 44, 55 (3d Cir. 2001) (citations and internal quotations omitted).

Like its federal counterpart, the New Jersey Uniform Arbitration Act, N.J.S.A. 2A:23B-1 et seq., upholds such agreements except upon contract law grounds:

> An agreement contained in a record to submit to arbitration any
> existing or subsequent controversy arising between the parties
> to the agreement is valid, enforceable, and irrevocable except

upon a ground that exists at law or in equity for the revocation
of a contract.

N.J.S.A. 2A:23B-6(a).

"A party to a valid and enforceable arbitration agreement is entitled to a stay of federal

court proceedings pending arbitration as well as an order compelling such arbitration."

Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. V.I. 2003) (referring to 9 U.S.C. §§

3-4, Seus v. John Nuveen & Co., 146 F.3d 175, 178 (3d Cir. 1998)).  See also N.J.S.A § 2A:23B-

7 (same in state court).  Section 3 of the Act provides as follows:

> If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which the
> suit is pending, upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance with
> the terms of the agreement, providing the applicant for the stay is
> not in default in proceeding with such arbitration.

9 U.S.C.§ 3.

Here, Mr. Calello moves to dismiss the Complaint and compel arbitration.  However, as

Dr. Smith contends, the proper procedural approach is a motion to stay the proceedings in favor

of arbitration.  The Court therefore treats the motion as one to stay and compel.

## B.  Analysis

### a.  The legal malpractice claim is arbitrable.

Mr. Calello argues that the complaint should be dismissed and arbitration compelled

based on the strong presumption in favor of enforcing arbitration agreements, and based on the

language of the particular agreement in question.  Dr. Smith counters that arbitration agreements

should not cover legal malpractice claims as a matter of law and therefore such clauses are

invalid and unenforceable.  Dr. Smith acknowledges that neither the Appellate Division nor the

New Jersey Supreme Court have yet addressed the issue as to whether a retainer's arbitration clause may include a legal malpractice claim, but argues that the New Jersey Supreme Court would find such clauses invalid.

The Supreme Court recently provided the guiding marker on the issue:

> As this Court reaffirmed last Term, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. __, __ (2011) (slip op., at 6-7.)  That rule resolves these cases.  West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA. See *ibid.* see also, e.g., *Preston v. Ferrer*, 552 U.S. 346, 356 (2008) (FAA pre-empts state-law granting state commissioner exclusive jurisdiction to decide issue the parties agreed to arbitrate); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995) (FAA pre-empts state law requiring judicial resolution of claims involving punitive damages); *Perry v. Thomas*, 482 U.S. 483, 491 (1987) (FAA pre-empts state-law requirement that litigants be provided a judicial forum for wage disputes); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (FAA pre-empts state financial investment statute's prohibition of arbitration of claims brought under that statute).

<u>Marmet Health Care Center, Inc. v. Clayton Brown, et al.</u>, 565 U.S. __ (2012), slip op. at 3-4.

Dr. Smith circuitously relies on two state court cases in attempt to persuade the Court otherwise.  For example, Dr. Smith cites <u>Cohen v. Rou</u>, 146 N.J. 140 (1976) repeatedly throughout her opposition brief and argues that it is pertinent for the "scholarly discussion of the principles that govern the New Jersey Supreme Court's analysis of the validity of provisions in retainer agreements[.]" (Opp. Br. 18.)  However, the issue in <u>Cohen</u> does not relate to arbitration, but examines the enforceability of a one-year automatically-renewable retainer agreement where a six month notice is required prior to termination of the agreement.  The New Jersey Supreme Court reasoned that although the parties engaged in hard bargaining between experienced

negotiators as a matter of contract law, the agreement did not withstand ethical requirements in that the notice clause unreasonably limits a client's right to discharge an attorney.  Dr. Smith has not directed the Court's attention to any ethical violation here, and she provides no relevant reference to a violation of the Rules of Professional Conduct.  Additionally, Dr. Smith looks to dicta in a concurring opinion in Kamaratos v. Palias, 821 A.2d 531 (App. Div. 2003) to support her argument "that in light of the New Jersey Supreme Court's exclusive jurisdiction over the practice of law, only the New Jersey Supreme Court can sanction as valid the inclusion of arbitration clauses in retainer agreements." (Opp. Br. at 18.)  The argument is unpersuasive.  The concurring opinion took a general stance against the inclusion of arbitration clauses in client-attorney retainer agreements.  See Kamaratos, 821 A.3d 540 (concurring opinion) ("[A] retainer agreement that contains a commercial arbitration clause which waives the client's right to access the courts to resolve disputes arising out of the attorney/client relationship must be viewed as inherently unenforceable and against public policy.")  This stance appears extreme, especially with respect to the now well-established right to arbitrate such fee disputes, as was set forth by the majority opinion therein.  Id. at 537 – 538.

Notably, Mr. Calello does not attempt to distinguish Cohen or Kamaratos, and argues that even if New Jersey *arguendo* prohibited legal malpractice claims from arbitration agreements, such a prohibition is contrary to the terms and coverage of the FAA and is therefore preempted. The Court is persuaded by the reasoning provided by the Supreme Court in Marmet, *supra* at 11, and the general public policy in favor of arbitration, that legal malpractice claims arising from arbitration clauses are not *per se* invalid.

The next issue is the validity of the specific clause at issue in the Calello-Smith retainer agreement.  To be enforceable under New Jersey law, a waiver-of-rights provision must reflect

an "unambiguous intention to arbitrate" and the record must indicate a clear agreement to that provision. See Leodari v. CIGNA, 175 N.J. 293, 302 (2003); see also Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207 (3d Cir. 2007) ("An issue that is presumptively for the court to decide will be referred to the arbitrator for determination only where the parties' arbitration agreement contains 'clear and unmistakable evidence' of such an intent.") (internal reference omitted).

Upon certification by the Third Circuit Court of Appeals, the New Jersey Supreme Court recently set forth the four factors used to determine whether a contract is so oppressive or inconsistent with the vindication of public policy that it would be unconscionable to permit its enforcement:

> "[I]n determining whether to enforce the terms of a contract of adhesion, [we] look[] not only to the take-it-or-leave-it nature of the standardized form of the document but also to [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the 'adhering' party, and [(4)] the public interests affected by the contract."

> Delta, 189 N.J. at 40, quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 356 (1992).

Dr. Smith argues that the "general contract law principles of Delta Funding, and particularly the factors of the subject matter of the contract, the parties' bargaining position, and the public interest factor are the core of the analysis of the validity of provisions of retainer agreements." (Opp. Br. at 18-19.) Thus, Dr. Smith takes issue with the first, second, and fourth of the Rudbart factors. The discussion above addresses the permissibility of the arbitration clause at issue. In regard to the enforceability of a particular arbitration agreement, the Court may consider the "client's level of sophistication or experience in retaining and compensating lawyers[.]" Cohen, 146 N.J. at 160. Here, Dr. Smith clearly has an advanced educational background and at least some experience retaining attorneys, as she had retained and dismissed

two attorneys immediately prior to Mr. Calello to handle the underlying matter.  Dr. Smith

argues that the relative bargaining positions weigh in her favor because of the constrained timing

under which she signed the retainer agreement.  Indeed, the retainer was dated November 27,

2006 and signed by Dr. Smith two days later.  However, the urgency under which the retainer

agreement was signed was due to Dr. Smith's hiring of Mr. Calello upon her dismissal of her

previous two attorneys, amidst a motion with an impending return date of December 6, 2006.

Based on the presentation of the facts, no reasonable trier of fact could find that Mr. Calello

exerted undue influence over the relative bargaining positions so as to oppress Dr. Smith into

signing the retainer agreement.

  Somewhere embedded in Dr. Smith's argument under the second and fourth <u>Rudbart</u>

prongs, is a reliance on <u>Leodari</u> to suggest that there was no clear and unambiguous agreement to

arbitrate the legal malpractice claim.   In <u>Leodari</u>, the New Jersey Supreme Court declined to

enforce a waiver-of-rights provision in the absence of an employee's "unmistakable indication"

that he had agreed to arbitrate his whistleblower claims pursuant to the Conscientious Employee

Protection Act, N.J.S.A. 34:19-1 to -8.  <u>Leodari v. CIGNA</u>, 175 N.J. 293, 302 (2003).  Mr.

Leodari acknowledged receipt of an employee handbook which provided for arbitration of all

employment-related disputes.  While he signed the corresponding acknowledgement form, the

language therein did not refer specifically to arbitration.  A second handbook was later

distributed which included arbitration for statutory claims or common law matters regarding

employment discrimination, conditions of employment or termination of employment.  Mr.

Leodari signed the related form which again included no mention of the arbitration provisions

within the handbook.  Last, a separate form indicated receipt of the handbook and an agreement

to its provisions was distributed, and explicitly mentioned the alternative dispute resolution

process.  However, Mr. Leodari did not sign the agreement.  Thus, the New Jersey Supreme Court found that although the language provided an "unmistakable expression of an employee's willingness to waive his or her statutory remedies," id. (citations omitted), the record does not reflect Mr. Leodari's agreement to that policy.

Dr. Smith argues that "[w]holly absent is any assertion that Mr. Calello affirmatively advised Dr. Smith that the retainer agreement contained an arbitration clause in which she was agreeing to waive her right to trial by jury for any disputes that might arise out of the representation." (Opp. Br. at 31.)  However, the arbitration clause at issue here unambiguously and repeatedly directs any disputes between Dr. Smith and Mr. Calello to arbitration.  Dr. Smith does not argue that the arbitration clause is invalid because of its ambiguous language or because she failed to see it or affix her signature as was the case in Leodari.  Indeed, the facts indicate an "unmistakable indication" that Dr. Smith affirmatively agreed to arbitrate her claims.

Section 3.5 of the Retainer Agreement, supra at 3-4, provides for "Arbitration of Differences Between the Client and the Law Firm" and sets forth that "[s]hould any differences, disagreements, or dispute between you and the Law Firm *arise as to its representation of you, or on account of any other* matter, you agree to submit such disagreement in binding arbitration." (MTD Ex. C, Retainer Agreement) (emphasis added.)  Part (A) delineates a procedure to handle fee and costs issues, and additionally instructs that should the Fee Arbitration Committee established by the New Jersey Rules of Court "refuse to accept jurisdiction, or such difference involved a matter *other than* fees and costs, you or the Law Firm may submit the dispute to binding arbitration governed by the New Jersey Uniform Arbitration Act . . . ."  (Id., emphasis added.)  Consistently, Part (B) is entitled "Any Other Disagreements" and instructs that "[s]hould an issue arise between you and the Law Firm as to *any matter other than a fee dispute,*

you agree to submit such dispute(s) to binding arbitration in accordance with the laws and procedures set forth in the immediately preceding paragraph." (Id., emphasis added.)

The final paragraph of Section 3.5 unswervingly instructs that "[s]igning of this Agreement will constitute your acknowledgment that you have an absolute right in the first instance (and obligation under this Agreement) to submit any fee dispute between you and the Law firm to the appropriate Fee Arbitration Committee for resolution, and should that method not be available, you or the Law Firm have the obligation to submit *any fee or other dispute* to binding arbitration as set forth in this Section *instead of and in place of submitting such Issues for resolution by a court.  Signing of this Agreement will be deemed your consent to the methods of alternative dispute resolution set forth in this Section, and constitutes a waiver on your part and on the part of the Law Firm to have such disputes resolved by a court which might include having the matter determined by a jury.*" (Id., emphasis added).

Dr. Smith's signature of the Retainer Agreement immediately follows Section 3.5, and the signature page additionally mentions the arbitration provisions above the signature lines: "you specifically agree to the arbitration provisions of section 3.5, particularly, *the wavier of your right to submit* any dispute between you and the Law Firm to a court for resolution." (Id., emphasis added.)

The Court finds that the arbitration clause at issue is not so oppressive, one-sided, or inconsistent with public policy that it would be unconscionable to permit its enforcement.  The clause is broadly defined, clear and unambiguous, and the record reflects Dr. Smith's agreement to arbitrate.  The Court does not overlook that the separate but related matter of outstanding attorney fees has already proceeded through arbitration.  For whatever reason, Dr. Smith elected

not to participate in the arbitration on the outstanding legal fees which resulted in an award in Mr. Calello's favor, despite her issue with the quality and effectiveness of his representation.[3]

### b. Mr. Calello did not waive his right to arbitration.

Alternatively, Dr. Smith argues that Mr. Calello waived his right to rely upon the arbitration clause by delay, his litigious conduct, and the prejudice it would cause her.  Thus, Dr. Smith contends that Mr. Calello is not entitled to a stay of litigation pending arbitration pursuant to Section 3 of the Federal Arbitration Act because he has defaulted in proceeding with arbitration.

The court is to decide whether a party has waived its right to arbitrate based on litigation conduct.  See Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007). "[P]rejudice is the touchstone for determining whether the right to arbitration has been waived" by litigation conduct.  Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992).  A nonexclusive list of factors relevant to the prejudice inquiry includes: "not only the timeliness or lack thereof of a motion to arbitrate but also the degree to which the party seeking to compel arbitration has contested the merits of its opponents' claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to which both parties have engaged in discovery." Id. at 926-27.

In Hoxworth, the Third Circuit Court of Appeals found that the defendants waived their right to arbitration based on the following litigation conduct:

---

[3]      The New Jersey Supreme Court has recognized the substantive and procedural relationship between fee arbitration disputes and civil malpractice claims.  See Saffer v. Willoughby, 143 N.J. 256 (1996).

> (a) Participating in numerous pretrial proceedings during the more than eleven months before moving to compel arbitration; (b) filing a motion to dismiss the complaint for failure to state a claim and a motion to disqualify plaintiffs' counsel; (c) taking the deposition of each of the named plaintiffs, depositions that would not have been available in arbitration; (d) taking a deposition which prompted plaintiffs to file a motion to protect their right to depose that deponent in the future; (e) submitting inadequate responses to plaintiffs' discovery requests, which prompted the plaintiffs to file two motions to compel, which the defendants opposed; (f) filing of a motion to stay discovery; (g) consenting to the district court's first pretrial order; and (h) filing of a lengthy memorandum in opposition to plaintiffs' motion for class certification. "Only . . . . after defendants' motion to dismiss the complaint was denied and plaintiffs' motion to compel discovery was granted, did [one of the defendants] file its motion to compel arbitration."

> Ehleiter, 482 F.3d at 223 (relaying and quoting Hoxworth, 980 F.2d at 925-96).

Thus, the prejudice which supports a finding of waiver can be of a substantive nature, for example, where a party seeking arbitration loses a motion on the merits and then attempts to relitigate the issue by invoking arbitration, or obtains information through discovery that would not normally be available through arbitration, or the prejudice may be procedural in nature, where a party may be prejudiced by the unnecessary delay or expense that results. Id. at 925-27; see also Ehleiter, 482 F.3d at 224 – 25; Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 208 (3d Cir. 2010). The Third Circuit Court of Appeals reminds that "the length of the time between when a party initiates or first participates in litigation and when it seeks to enforce an arbitration clause is not dispositive in a waiver inquiry." Gray Hold Co., Inc. v. Cassady, 645 F.3d 444, 455 (3d Cir. 2011). "This recognition that the right to arbitrate may be waived under certain circumstances is consistent with the purpose behind arbitration itself – arbitration is meant to streamline the proceedings, lower costs, and conserve private and judicial resources, and it furthers none of those purposes when a party actively litigates a case for an extended period only

to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place."
Nino, 609 F.3d at 209.

Here, the procedural history demonstrates that Dr. Smith instituted a joint action against three attorneys and their law firms for malpractice.  The defendants responded with counterclaims and cross claims for comparative negligence as joint tortfeasors.  Indeed, Mr. Calello raised the issue of arbitration in his answer with counterclaim.  On June 16, 2011, Mr. Calello advised the Court *pro se* of his intent to file a motion seeking dismissal pursuant to the arbitration clause.  Shortly thereafter, on August 3, 2011, Dr. Smith entered an amended complaint adding the fourth defendant attorney and his law firm.  The record shows that Mr. Calello notified the Court two additional times that he may rely on the clause, and on the second occasion he explained that the newly added Defendant may join him in filing a motion to compel.  Actually, this second notification took place by telephone conference during which Mr. Calello was ordered to advise the Court of his intention to rely on the clause.  On December 16, 2011, the Court was again notified of the arbitration clause issue in a joint status report.  In March and April of 2012, the defendant attorneys, with the exception of Mr. Calello, entered into stipulations dismissing the outstanding claims.  Amidst this activity, Mr. Calello sought leave to rely on the arbitration clause and noted the past September 21, 2011 notification deadline, but explained that he chose not to file earlier "in light of the co-defendants cross claims as well as the third party actions.  As the actions against all of the co-defendants are resolved and we are in the process of issuing a dismissal as to our third party action, clearly the situation has changed."  Mr. Calello filed no prior motions with the Court prior to the present motion.  Discovery in this case is complete, and included investigation of the four defendant attorneys implicated in the action.

Dr. Smith argues that she suffered prejudice in the substantial amounts of time, effort, and money she devoted to prosecuting the action, and that Mr. Calello was able to use the Federal Rules to conduct discovery not otherwise available through arbitration. (Opp. Br. at 35.) Dr. Smith contends that the motion to compel arbitration is "grossly untimely" in that Mr. Calello failed to comply with two separate orders to advise the court whether he intended to file a motion, remained silent, and took full advantage of discovery, now is seeking to compel her to duplicate efforts by starting over in arbitration. (Id. at 37-38.) Further, Dr. Smith submits that "[a]ssuming *arguendo* that the arbitration clause in the Calello retainer agreement was valid and enforceable, the fact that there were co defendants and a third party defendant who were not parties to the arbitration agreement did not *automatically* mean that the Calello Defendants would be precluded from seeking to compel arbitration of the clai[m]s between the Plaintiff and the Calello Defendants." (Id. at 38, emphasis in original). Coextensively, Dr. Smith argues that Mr. Calello unilaterally determined that the existence of cross claims and a third party claim militated against arbitration, and that that determination infringed on the court's exercise of discretion to handle the issue in a judicially efficient method. (Opp Br. at 38-39.)

In turn, Mr. Calello reminds that he had not acted earlier "due to the certainty that the remaining defendants would third party Mr. Calello back into the case if the claims against him went to arbitration." (Reply Br. at 7.) Mr. Calello further explains that even if a possible third party action was somehow barred, the other defendants would have sought discovery from him. (Id., n. 2.)

Despite Dr. Smith's contentions, the record does not support a finding of prejudice. See Hoxworth, 980 F.2d at 926-27, *supra* at 17-18.  While Mr. Calello contested the merits of Dr. Smith's claims within his Answer, he did not engage in prior motion practice, nor is he

attempting to relitigate the issue by now invoking arbitration.  Additionally, his reliance on the arbitration clause is far from unexpected.  In fact, Mr. Calello repeatedly advised the Court of his possible intention to rely on the clause.  Nor is Mr. Calello's explanation for his delay unreasonable given that the case involves a joint action against four attorneys and their respective law firms, whom in turn filed cross-claims for comparative negligence as joint tortfeasors and third party actions against an attorney personally associated with Dr. Smith. Moreover, the record does not indicate that Mr. Calello was the cause of additional discovery, unnecessary delay, or expense.  In fact, the allegation is vague at best and includes no factual recitation of exactly what discovery or expenses Mr. Calello's delay caused.  The request for leave to file the motion was submitted in the same period that stipulations and dismissals were reached with respect to the three other defendant attorneys and their respective law firms.  Dr. Smith attempts to frame the issue that the motion to compel was submitted on the eve of the setting of a trial date.  However, the record demonstrates that the motion was timely filed based on the briefing schedule set by the Magistrate Judge.  Nor is it apparent to the Court that Dr. Smith has been prejudiced by Mr. Calello's engagement in discovery otherwise unavailable through arbitration.  Indeed, both parties participated in discovery, which apparently included Dr. Smith's deposing of Mr. Calello over three days and collection of documents.  Waiver is not compelled under the facts and circumstances of this case.

### III.    CONCLUSION

The Court stays the matter and compels the outstanding claims to arbitration, with a provision that if arbitration results in an award to Dr. Smith, there will be a set-off of the recovery of the arbitration award for attorney fees.

<u>/s/ Dickinson R. Debevoise</u>
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Dated:**  March 3, 2014